# EXHIBIT B

## ESI AND DOCUMENT PRODUCTION PROTOCOL

Pursuant to Fed. R. Civ. P. 26(f), the Parties mutually agree on the ESI protocol described below.

### A.    Duty of Cooperation

The Parties acknowledge their duty to work together cooperatively throughout the discovery process and intend to minimize costs, delays and duplication of efforts, "secur[ing] the just, speedy, and inexpensive determination" of this action in accordance with Fed. R. Civ. P. 1.

### B.    ESI Liaisons

The Joint Discovery Committee shall serve as liaisons regarding all e-discovery issues.

### C.    Definitions

1.    **"Custodian"** means any person or organization with possession, custody, or control of a Document.  For purposes of this litigation, a custodian may include not only individuals but also databases, repositories, and information systems that store or manage responsive documents and data where not reasonably attributable to an individual.

2.    **"Defendants"** means and refers to the named defendants in the above-captioned matter.

3.    **"Document"** is defined to be synonymous in meaning and equal in scope to the usage of this term in Rules 26 and 34 of the Federal Rules of Civil Procedure.

4.    **"Electronic Document or Data"** means Documents or Data existing in electronic form at the time of collection, including but not limited to: e-mail or other means of electronic communications, word processing files (e.g., Microsoft Word), computer presentations (e.g., PowerPoint slides), spreadsheets (e.g., Excel), and image files (e.g., .jpg).

5.      "**Electronically Stored Information**" or "**ESI**," as used herein has the same meaning as in Federal Rules of Civil Procedure 26 and 34.

6.      "**Extracted Text**" means text obtained directly from an electronic document's text layer including system-generated content visible to a typical end user (e.g. email body/headers, word-processing text, spreadsheet cell values, presentation speaker notes, text from PDFs with an embedded text layer).

7.      "**Hard-Copy Document**" means Documents existing in paper or other tangible form at the time of collection.

8.      "**Native Format**" means and refers to an electronic document's associated file structure defined by the original creating application.

9.      "**Metadata**" refers to application and system information of a file that contains data about the file, as opposed to describing the content of a file, as the term is described and used in The Sedona Conference Glossary: E-Discovery & Digital Information Management (Fourth Edition). As used in this Order, Metadata applies only to existing metadata created in the ordinary course of business that is reasonably practical to provide and is not privileged.

10.      "**Media**" means an object or device, whether real or virtual, including but not limited to, a disc, tape, computer, or other device on which data is or was stored.

11.      "**Optical Character Recognition**" or "**OCR**" means a technology process that captures text from an image for the purpose of creating a parallel text file that can be associated with the image and searched.

12.      "**Party**" means and refers to the Plaintiff and/or Defendant in the above-captioned matter, either individually or collectively when used in the plural form.

13.      "**Plaintiff**" means and refers to the named plaintiffs and any plaintiffs subsequently

added to this consolidated matter.

14.      "**Hash Value**" is a unique numerical identifier that can be assigned to a file, a group of files, or a portion of a file, based on a mathematical algorithm applied to the characteristics of the data set.

15.      "**Confidentiality Designation**" means the legend affixed to Documents for Confidential Discovery Information as defined by, and subject to, the terms of the Protective Order entered by the Court in this Litigation.

16.      "**Searchable Text**" means the text extracted from an Electronic Document or Optical Character Recognition version generated from a Hard-Copy Document.

17.      "**Load Files**" means a file that relates to a set of scanned images or electronically processed files that indicates where individual pages or files belong together as documents, to include attachments, and where each document begins and ends. A load file may also contain data relevant to the individual documents, such as selected metadata, coded data, and extracted text.

**D.      Preservation**

1.      The Parties represent that they have made every reasonable effort to identify and issue litigation hold notices to those custodians with data, and persons responsible for maintenance of non-custodial data that are relevant to the claims and defenses in this litigation.

2.      Preservation Not Required. The Parties need not preserve the following categories of electronic information:

        (a) Electronic data stored on smartphones or tablets, such as calendar or contact data or notes, that is substantially duplicative of data that are more accessible elsewhere;

        (b) Data stored in random access memory ("RAM"), cache memory, or in

temporary or cache files, including internet history, web browser cache, and

cookie files, wherever located; and

(c) Data stored in backup tapes or other back up media in systems designed for

disaster recovery

3.      Preservation Does Not Affect Discoverability or Claims of Privilege. By preserving

information for the purpose of this litigation, the Parties are not conceding that such material is

discoverable, nor are they waiving any claim of privilege. The Parties do not waive any objections

to the production, discoverability, admissibility, or confidentiality of documents and ESI except

as expressly provided herein.

## E.    Document and Data Sources

1.      For a Party served after the entry of this Order, within twenty-one (21) days from

entry of an appearance in this litigation, each Party shall identify and describe non-custodial data

sources identified after a reasonable investigation, not listed in paragraph D(2)(a) above, that

contain data relevant to the claims and defenses.[1]

2.      For a Party served after the entry of this Order, within twenty-one (21) days from

entry of an appearance in this litigation, each Party shall identify the names and titles of the

custodians that have relevant information related to the claims and defenses, based on a reasonable,

good faith investigation.[2]

3.      Any other Party may identify additional custodians or non-custodial data sources

---

[1] By agreeing to identify relevant sources of non-custodial data, Defendants are not waiving any objections that discovery from such non-custodial data sources is not proportional to the claims and defenses.

[2] By agreeing to identify relevant sources of custodial data, Defendants are not waiving any objections that discovery from such custodians is not proportional to the claims and defenses.

that may have relevant information related to the claims or defenses to be collected, searched, and/or produced. If a producing Party declines to include in the collection process any custodian or data source suggested by another Party, the matter shall be disclosed to the requesting Party and may be submitted to the Discovery Committee for determination first, then to the Court accordance with the Court's procedure set forth at ECF No. 8 at 8, ¶ 10.

4.    The Parties shall timely supplement such disclosure to the extent new custodians or custodial sources are identified.

**F.    Identification of Responsive ESI.**

Unless otherwise ordered by the Court, the Parties will meet and confer about the most appropriate search methodology to efficiently, effectively, and expeditiously identify, cull, and/or review ESI and documents for production in this matter.  Documents collected from individuals (as opposed to collected from databases, repositories, or information systems that store or manage responsive documents and data where not reasonably attributable to an individual) that hit on agreed search terms must be reviewed for responsiveness by a human reviewer.  TAR/GenAI may be used for prioritization, not suppression, of search-term hits.

**G.    Mobile and Handheld Device Documents and Data.**

The Parties agree to meet and confer regarding the contents of mobile devices which may contain unique information that is relevant to the claims and defenses and, if so, how and whether such information should be collected and reviewed for production.

**H.    Production Format and Processing Specifications**

**1.   Bates Labels**

(a) Each page of a produced Document will include a legible Bates number that

(1) is unique across the litigation; (2) has a constant length (0-padded)

across the litigation; and (3) is sequential within each Document.

(b) Bates numbering for each Party shall be standardized and reasonably descriptive of the producing Party (Defendant example: US-FAA-0000001; Plaintiff example: PSC-Crofton-0000001).

2. **Paper Records:**

Paper records will be scanned or otherwise converted into electronic form from paper documents in the following format:

(a) **TIFFs.** All documents shall be scanned to single page Group 4, TIFF format, at least 300 dpi and 8 ½ x 11 inch page size, except for documents requiring higher resolution or different page size. Each image file should have a unique file name which shall be the Bates number of the page.

(b) In scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., paper documents should be logically unitized based on Logical Document Determination(or "LDD")). The parties will make their best efforts to have their vendors unitize documents correctly and will commit reasonable resources to address situations where there are improperly unitized documents.

(c) For documents found in folders or other containers with labels, tabs, or other identifying information, such labels and tabs shall be scanned where practicable. Pages with Post It notes shall be scanned both with and without the Post It, with the image of the page with the Post It preceding the image of the page without the Post It.

(d) **Objective Coding Fields.** The following objective coding fields should be provided, if applicable: (1) beginning Bates number; (2) ending Bates number; (3) beginning attachment Bates number; (4) ending attachment Bates number; (5) page count; (6) source location/custodian; (7) original filename; (8) Hash Value (MD5 or SHA-1)  (9) confidential; (10) and redacted.

(e) **Text Files.** The parties agree to exchange searchable text. Where documents contain extractable text, extracted text shall be provided. OCR text shall be provided only for documents that do not contain extractable text (e.g. scanned hard copy documents and images). Documents containing redactions shall not contain redacted portions of the file within the text file. For documents containing redactions either standard placeholders shall be inserted into extracted text to replace the redacted text such as "<REDACTED>" or the OCR may be performed after redactions are applied. Text shall be produced as separate, document-level text files. The file name of each text file should correspond to the file name of the first image file of the document with which it is associated. The text files will not contain the redacted portions of the documents. When OCR is required, OCR software should be set to the highest quality setting during processing. Documents containing foreign language text shall be OCR'ed using the appropriate settings for that language, e.g., OCR of German documents will use settings that properly capture umlauts. Settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process.

### 3. Electronically Stored Information

The parties will produce electronically stored information ("ESI") in TIFF format according to the following specifications:

(a) All TIFF formatted documents will be single page, Group 4 TIFF, at 300 X 300 dpi resolution, and 8½ X 11 inch page size, except for documents requiring different resolution or page size.

(b) An image load file, in standard Opticon format, showing the Bates number of each page and the unitization of the documents, will accompany all document images.

(c) Each imaged version of an electronic document will be created directly from the original electronic document.

(d) Color documents (e.g., color photographs or graphical representations in color) shall be produced as black & white, single-page TIFF images in accordance with the technical specifications set forth above, unless the production in black and white alters or obscures the substance of the document or if ordered by the Court; however, the producing party does not have an affirmative obligation to proactively identify and produce these documents in color. If color images are required, the files shall be delivered in single page, JPEG format. Documents produced in color must be produced with agreed compression. A Party may request that a reasonable number of documents be produced in a color format upon review of the other Party's production.

(e) Parent-child relationships (the association between an attachment and its

parent document or between embedded documents and their parent) shall be preserved. Links to online storage systems, such as Google drive, OneDrive, or others, do not establish a parent-child relationship. The producing party is not obligated to produce non-substantive embedded objects (e.g. logos). However, to the extent a Document contains a working hyperlink to an external file or cloud-stored item, the Receiving Party may make a reasonable request for production of the underlying linked item(s). Upon such a request, the Producing Party will produce the linked item(s) if they:

(1) are within the Producing Party's possession, custody, or control;

(2) are reasonably accessible;

(3) are responsive and not privileged; and

(4) identification of the linked file does not require additional technical tools, scripting, or other manual effort to identify and collect.

(f) The following metadata fields, if associated with the electronic document, will be produced. The parties are under no obligation to create metadata where it does not exist and is not reasonably available, or to manually populate these fields where the metadata is not extractable from the native source files. Metadata field information available from the native source files will be extracted therefrom and will not be altered or modified from the original. Because different platforms use different nomenclature for these metadata fields, the below offers a common name and description, with the expectation that each party produce that field or its substantial

equivalent, which may include combining date/time fields.

| Field Name | Field Description | Required for Email | Required for Non-E-mail ESI |
|---|---|---|---|
| All Custodian | Name of custodian(s) or non-custodial data source of email(s) or file(s) produced (Last Name, First Name format) as available | x | x |
| BegBates | Beginning Bates# (including Prefix) | x | x |
| EndBates | Ending Bates# (including Prefix) | x | x |
| BegAttach | Beginning Bates number of the first document in an attachment range (only in emails with attachments) | x | x |
| EndAttach | Ending Bates number of the last document in attachment range (only in emails with attachments) | x | x |
| From | From field extracted from an email message | x | |
| Author | Author field extracted from the metadata of a non-email document | | x |
| To | To or Recipient extracted from an email message | x | |
| Cc | Carbon Copy ("Cc") field extracted from an email message | x | |
| Bcc | Blind Carbon Copy ("Bcc") field extracted from an email message | x | |
| EmailSubject | Subject line extracted from an email message | x | |

| Filename | File name — Original name of file as appeared in original location | | x |
|---|---|---|---|
| Title | Title field extracted from the metadata of a non-email document | | x |
| DateSent | Sent date of an email message (mm/dd/yyyy format) (a given email will have either a DateSent or Date Recvd, but not both) | x | |
| DateRcvd | Received date of an email message (mm/dd/yyyy format) (a given email will have either a DateSent or Date Recvd, but not both) | x | |
| DateCreated | Date that a non-email file was created (mm/dd/yyyy format) | | x |
| DateLastModified | The application recorded time on which the document was last modified | | x |
| TimeSent | Time e-mail was sent (hh:mm:ss format) (a given email will have either a TimeSent or Time Rcvd, but not both) | x | |
| TimeRcvd | Time e-mail was received (hh:mm:ss format) (a given email will have either a TimeSent or Time Rcvd, but not both) | x | |
| TimeZone | Timezone used for processing | x | |
| FileType | The type of document | x | x |
| All FilePath | File path storage location of the document or email if the source application allows for the creation of folders. Any email container name should included in the path. | x | x |

| | | | |
|---|---|---|---|
| NativeLink (if natives are exchanged) | Relativepath to any files produced in native format | x | x |
| TextLink (if text is exchanged) | Relative path to any OCR/extracted text files in the production set | x | x |
| HashValue | MD5 or SHA-1 hash value used to deduplicate the data | x | x |
| Confidentiality Designation | Confidentiality Designation | x | x |
| Export Control | Export Control Designation | x | x |
| DocExt | File extension for email or e-doc. | x | X |
| Pages | Number of pages in the produced document (not applicable to native file productions). | x | x |
| LastModBy | Last Modified/Saved By information as derived from the properties of the document. | x | x |
| ConversationID | Email ConversationID | x | |
| MsgID | Email MsgID | x | |
| AttachCount | Number of attachments | x | x |
| AttachNames | Filenames of attachments | x | x |
| Redacted | "Y" if document is redacted | x | x |

| ProdVol | Name of the Production Volume | x | x |
|---|---|---|---|
| HasRevisions | Y if a word processing document with revisions | x | x |
| HasComments | Y if a word processing or spreadsheet document with comments | x | x |
| HasHiddenContent | Y if a word processing, presentation, or spreadsheet document has hidden content. | x | x |
| Withheld for Privilege | "Y" if document is withheld | x | x |
| Privilege Category | Applicable category(ies) of privilege. For example, "PII," "Atty-Client," "Atty-Work Product") | x | x |

4. The parties will produce the following ESI types in in native file format files with TIFF placeholder images:

- Electronic spreadsheets

- Audio/video files

- Animations

- Structured data exports (databases, logs)

For file types of which TIFF placeholder images cannot be reasonably generated, the Parties may produce the file natively.

The Parties will produce word processing (e.g., Microsoft Word), and image (e.g., jpeg, gif) documents in native format upon a reasonable request identifying the need for the native and subject to a reasonable number of documents, after receiving the TIFF

images.

5.    Any document produced in native format, will be produced according to the following specifications:

    (a) A unique document number shall be used as the file name and the original file name and file extension shall be preserved in the corresponding load file. An example of this convention would be: "PSA_00000001.doc."

    (b) The native format documents shall be accompanied by reference information that sets forth for each document, sufficient information to allow the parties to track and authenticate the native format documents produced, including: (i) the name of the custodian from whose files the electronic file is produced; (ii) an appropriately calculated "MD-5 Hash Value" or other Hash Value; (iii) the original name of the file; and (iv) a document control number.

    (c) Any file produced in native format need not be imaged. Instead, a single page placeholder image shall be provided that indicates the file was produced in native format and contains the Bates number of the corresponding file.

**6.  Other File Types**

The Parties will meet and confer on the production format of less-commonly used file types, such as CAD, GIS data, materials and prototypes testing, etc.

**7.  Alternate Formats**

Notwithstanding the Parties' stipulations herein, upon reasonable request made by the Receiving Party, the Parties shall confer regarding the production in an alternate

format of a document previously produced in accordance with this Order.

8.  **Searchable Text File.**

All TIFF files are to be provided with an accompanying searchable text (.TXT) file extracted from the native, electronic file (not generated as an OCR file from the TIFF image(s)), and such text files shall contain the full text extraction. To the extent reasonably feasible, extracted text shall provide all comments, tracked changes, speaker's notes, and text from hidden worksheets, slides, columns, and rows.

In the case of files with redacted text, OCR'd text of the redacted documents may be provided in lieu of extracted text.  For spreadsheets with redactions, the redacted portion of the spreadsheet need not be produced in a searchable text file. For documents in foreign languages, the OCR shall be performed using an OCR tool and settings suitable for the particular byte or multi-byte languages.

(a)  Text must be encoded in UTF-8.

(b)  Each text file shall be named according to the Bates number of the first page of the corresponding image files (e.g., BATES000001.TXT).

(c)  In the case of email, the corresponding text file shall include, where reasonably available: (1) the individual(s) to whom the communication was directed ("To"); (2) the author(s) of the email communication ("From"); (3) who was copied and blind copied on such email ("CC" and "BCC"); (4) the subject line of the email ("RE" or "Subject"); (5) the names of any attachments; and (6) the text (body) of the email.

9.  **Redacted Files**

Redacted files should be run through an OCR process to capture the visible text

only and the results produced in lieu of the original extracted text.

**10. Data Load Files/Cross-Reference Files**

Fielded data should be exchanged via a document-level-database load file in standard Concordance (DAT) delimited format. All image data should be delivered with a corresponding image load file in the following format: Opticon (OPT). The total number of image files referenced in the image load file should match the total number of images in the production delivery.

All DAT and OPT load files will be provided in a folder called "DATA" on the production media.

All Concordance delimited text files shall meet the following specifications:

- The "column" delimiter is "," (ASCII 020);
- The "quote" delimiter is "þ" (ASCII 254);
- The "new line" delimiter is "®" (ASCII 174);
- The first line must contain the column/field names;
- Every row must have the same number of columns/fields (empty values are acceptable); and
- Text must be encoded in UTF-8.

**11. De-Duplicating Documents**

The parties may deduplicate globally (i.e., across all custodians) using hash values. This will result in the Producing Party needing to produce only a single copy of responsive Duplicate ESI, provided that all other custodians of the Duplicate ESI are listed in the "All Custodian" field and "All File Paths" field. The Parties shall de-duplicate stand-alone documents only against stand-alone documents and shall de-duplicate email documents

with families only against email documents with families. De-duplication shall not break apart families. When performing deduplication, the Parties shall use industry-accepted hash-value deduplication technology, provided these technologies do not exclude unique content from review consideration or production.

**12. Most Inclusive Email Productions**

Email threads are email communications that contain prior or lesser-included email communications which also may exist separately in the Party's electronic files. A most inclusive email thread is one in which, at a minimum, (i) all participants (From, To, CC, BCC) in any email in the thread is included as a participant to every email in the thread, (ii) all attachments to any email in the thread are attachments to every email in the thread, (iii), the subject line of every email in the thread is identical except for the addition of "RE:", "FWD", and the like, and (iv) the full body text of all lesser-included emails in the thread are included in the most inclusive email without alterations such as subsequently added in-line comments. Parties may produce most- inclusive email threads and not separately produce lesser-included emails contained in those same threads. For the avoidance of doubt, under this provision, only email messages included in a produced most-inclusive thread, as herein defined, need not be produced, and any relevant email included in a thread that is not a most-inclusive thread, as defined herein, must be produced. To the extent that an e-mail thread contains privileged communications, such communications can be redacted. If an e-mail thread contains responsive, non-privileged communications, the entire e- mail thread cannot be withheld as privileged. Upon reasonable request, the Parties agree to provide individual emails within an email thread.

**13. Foreign Language Documents.**

Responsive hard-copy documents and ESI that contain languages other than English, in whole or in part, shall be produced in the original language(s).

**I.    Processing**

**1.   Date Fields Time Zone.**

The parties shall process ESI with a single time zone and a date and time setting that is consistent across that party's productions. The time zone used shall be Eastern Standard Time (EST)

The Parties will use reasonable efforts and standard industry practices to address Documents that present imaging or form production problems (including encrypted and/or protected files identified during the processing of ESI) ("Exception Files"). The Parties will meet and confer regarding procedures that will be used to identify, access, and process Exception Files. If the Parties cannot reach agreement on the handling of Exception Files, they will submit any dispute to the Discovery Committee.

**2.   De-NISTing.**

Electronic files will be De-NISTed, removing commercially available operating system and application file information contained on the current NIST file list.

**3.   Proprietary Software.**

To the extent that relevant ESI cannot be rendered or reviewed without the use of proprietary software, the Parties shall meet and confer to minimize any expense or burden associated with the production of such documents in an acceptable format, including issues as may arise with respect to obtaining access to any such software and operating manuals.

    **4.  Source Code.**

This Stipulation does not address measures for limiting access to and protecting the confidentiality of Source Code. The Parties agree to meet and confer regarding an appropriate protocol for the review and production of necessary Source Code, if any.

    **5.  Encrypted or Password Protected ESI.**

For any ESI that exists in encrypted format or is password protected, the producing Party will provide the other Parties access to those files to the extent possible.

**J.  Databases, Structured, Aggregated or Application Data.**

The Parties will meet and confer to address the production and production format of any responsive data contained in a database or other structured or aggregated data source or otherwise maintained by an application. The Parties will reasonably cooperate in the exchange of information concerning such databases and data sources.

**K.  Production Media.**

    1.  The producing Party will use the appropriate electronic media (CD, DVD, or hard drive) or secure electronic transfer for its ESI production, and, if physical media is being provided, will cooperate in good faith to use the highest-capacity available media to minimize associated overhead. The producing Party will label the physical media with the producing Party, production date, media volume name, and document number range. Any replacement Production Media will cross-reference the original Production Media, clearly identify that it is a replacement and cross- reference the Bates Number range that is being replaced.

    2.  **Encryption.** For productions made under this Order, industry-standard encryption tools and practices may be used when transferring data between Parties.

Passwords must be at least 8 characters with a mix of character sets and sent in a separate communication from the encrypted data.

**L.      Privilege Log**

1.      The Parties shall not be required to log any privileged, work product, or joint defense confidential communications or documents exchanged with, generated, or written by or at the direction of their inside or outside counsel on or after January 29, 2025 (the date of the accident).

2.      Within thirty (30) days after any party has substantially completed its document productions, that party shall provide a log of the documents withheld or redacted for privilege (including the attorney work-product doctrine). The privilege log shall include at least the following fields: Custodian, From, To, CC, BCC, File Name, File Path, Date Created or Sent, Date Last Modified, Description (sufficient to allow the other parties to evaluate the merits of the claim of privilege), Basis of Withholding/Redaction (attorney-client privilege, work product, etc.). Names of attorneys appearing in the log should be identified with an identifying character or ESQ.  The format and contents of any log for materials withheld pursuant to Annex 13 or related federal regulations shall be negotiated separately.

3.      The Parties are not required to log or produce non-responsive family members to responsive documents on a privilege log. The Parties need not produce attachments to items included on a privilege log unless they are responsive, unique material and not privileged. Non-responsive family members be represented with a "Withheld – Non-Responsive" placeholder.

**M.      Limitations and Non-Waiver.**

1.     This protocol provides a general framework for the production of ESI and paper documents on a going forward basis. The Parties and their attorneys do not intend by this protocol to waive their rights to the attorney-client or work-product privileges, except as specifically required herein, and any such waiver shall be strictly and narrowly construed and shall not extend to other matters or information not specifically described herein.

2.     The production of privileged materials, whether inadvertent or otherwise, shall not lead to a waiver of the privilege. Parties may claw back produced privilege documents by notice to the other side. Each side shall follow the procedures of F.R.C.P. 26(b)(5) in the event that it discovers privileged documents in a production it receives. The parties will ask the court to enter a separate F.R.E. 502(d) order. F.R.E. 502(b) is not replaced in its entirety by the stipulations in this protocol.

(a) Identification by Producing Party - If a Party or third party produces information that it later discovers, or in good faith later asserts, to be privileged or otherwise protected from disclosure, the Producing Person must promptly notify in writing the Receiving Persons of the production and the basis for the privilege or other protection (i.e., provide a corresponding privilege log), and request in writing the return or confirmed destruction of the produced privileged or protected information.

(b) Identification by a Receiving Person - If a Party or third party receives information that it later discovers, or in good faith believes, to be privileged or otherwise protected from disclosure, the Receiving Person must promptly notify in writing Producing Person of the production. The Producing Person shall then promptly notify the Receiving Person in writing of the basis for

the privilege or other protection and request in writing the return or confirmed destruction of the produced privileged or protected information.

3.      Any notifications of production of privileged material must be provided far enough in advance to resolve any disputes regarding the asserted privilege more than thirty (30) days before trial.

4.      Upon reasonable recognition of, or receipt of notification about, any inadvertent production of privileged information, the Receiving Person shall return or destroy any records of that information and all copies thereof, as well as materials referencing or derived from that information (e.g., notes), within five (5) days of the notification, and shall make no further use of that information whatsoever. In particular, upon receipt of a corresponding privilege log, the Receiving Persons must (a) return the information to the Producing Person; or (b) confirm in writing to the Producing Person the destruction of all such information, including all later created excerpts, summaries, compilations, and other documents or records that include, communicate or reveal the information claimed to be privileged or protected. If the Receiving Person disclosed the specified privileged information before being notified of its inadvertent production, then the Receiving Person must take reasonable steps to retrieve the information, and so notify the Producing Person of the disclosure and its efforts to retrieve the Privileged Material.

5.      If information contained in a Document subject to a claim of inadvertent production already has been used in or described in other Documents generated by the Producing Person, that Receiving Person may dispute the privileged nature of the Document, provided the Receiving Person sequester all such privileged information and all Documents containing the privileged information until the claim has been resolved. The

Receiving Person shall notify the Producing Person in writing of the basis for its disagreement that such information is privileged or protected from disclosure, and may retain the information asserted to be privileged for the sole purpose of responding to a motion by the Producing Person to deem the information privileged or protected from disclosure, but may make no further use of the information claimed to be privileged.

**N.    General Provisions.**

1.    Unless this Court orders otherwise, each Party shall bear the costs of preserving, collecting, processing, reviewing, and producing its own documents and ESI.

2.    Any practice or procedure set forth herein may be varied by agreement of the Parties, and first will be confirmed in writing, where such variance is deemed appropriate to facilitate the timely and economical exchange of electronic data or other covered discovery materials.

3.    Should any Party subsequently determine in good faith that it cannot proceed as required by this Stipulation or that the Stipulation requires modification, the Parties will work in good faith to resolve such dispute through the Joint Discovery Committee.

4.    All data produced shall comply with the international laws and regulations governing privacy to which such data sources are jurisdictionally subject, including but not limited to, the European Union's General Data Protection Regulation ("GDPR").

5.    Nothing in this protocol shall relieve a Party of its obligation to produce or log documents of which they have actual knowledge and which are subject to discovery under Rule 26, subject to any objections.