# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN RE: MID-AIR COLLISION IN WASHINGTON, D.C., JAN. 29, 2025 | LEAD CASE NO. 1:25-CV-03382-ACR |
| This Filing Relates to: *All Cases* | |

**AMERICAN AIRLINES, INC.'S RESPONSE TO PLAINTIFFS' FIRST RULE 34 REQUEST FOR PRODUCTION CONCERNING LIABILITY**

## PRELIMINARY STATEMENT

American Airlines ("American") states that it did not operate Flight 5342 and therefore, the majority of the discovery sought is irrelevant to the very limited role of American in scheduling Flight 5342 and as the ticketing carrier, which are the subject of a dispositive motion to dismiss filed on December 17, 2025. Through its participation on the Joint Discovery Committee ("JDC"), American understands that the PSC nevertheless believes that American's perception of any risk of a Near Mid-Air Collision (as that term is defined by the FAA's Aeronautical Information Manual ("AIM") Section 7-7-3(b)) at the time of the Subject Crash is relevant. Though American disagrees, to the extent practicable, as set forth below, American will provide information that it believes are relevant to address the PSC's concern.

American further states that in light of the United States of America's admission that it "owed a duty of care to Plaintiffs, which it breached, thereby proximately causing the tragic accident on January 29, 2025" and that it "is liable to a Plaintiff who is legally eligible to recover monetary damages," the Requests directed to American are largely irrelevant and moot. *See* ECF No. 53 at 1.

information for a 10-year period. Specifically, producing documents responsive to Request No. 13 would require American to manually search through archives of training materials, simulator scenarios, emails from potentially dozens of current and former instructors, chief pilots and other employees, and other data repositories for potentially responsive records. It is estimated such efforts would take many weeks at a minimum, which is unduly burdensome in light of the undisputed fact that American was not the operating airline for Flight 5342.

As such, American will not produce documents responsive to Request No. 13.

**14. Any agreement and/or other documents setting forth the terms pursuant to which American sold tickets for flights operated by PSA under the American Airlines and/or American Eagle brand name and/or by which PSA operated the Subject Flight under the American Airlines and/or American Eagle brand name.**

**Response**: American will produce the responsive agreements between PSA and American that were in place as of the date of the Subject Crash governing the terms of American's agreement to serve as ticketing agent for PSA including for Flight 5342. To the extent that this Request seeks any agreements between American and PSA prior to the Subject Crash, American objects on the grounds that the Request is not reasonably limited in time and scope because agreements pre-dating the Subject Crash have no relevance to the claims at issue.

**15. Documents that American provided to its pilots for the ten years preceding the Subject Accident concerning flight operations close to airports, including but not limited to, those concerning circling to land, helicopter traffic, and/or helicopter routes in close proximity to airports.**

**Response**: American objects to Request No. 15 on the grounds that it is duplicative to Request Nos. 6, 7, and 8. American further objects to Request No. 15 on the grounds that it seeks documents not relevant to the claims and defenses in this action. As American has explained numerous times, including during meet and confers of the JDC and separate meet and confers with the PSC, American and PSA are wholly separate airlines, and American's only role with respect

to Flight 5342 was to schedule the flight and as the ticketing carrier. American had no role in the operations of Flight 5342 including but not limited to providing any information to the PSA pilots operating Flight 5342. American's operations, therefore—including information provided to American's pilots, are not relevant to the claims and defenses in this action, as PSA was the operating carrier of Flight 5342.

American also objects to Request No. 15 on the grounds that its demand for documents concerning airports other than DCA seeks documents not relevant to the claims and defenses in this action. Flight 5342 was intended to land at DCA, and therefore any responsive documents concerning other airports are not relevant to this action.

American objects to Request No. 15 on the grounds that its demand for responsive documents covering 10 years preceding the Subject Crash and across all airports seeks documents not responsive to the claims and defenses in this action, is overbroad, and not proportional to the needs of this action considering: (i) American did not operate the Subject Flight and did not employ or train the PSA pilots operating Flight 5342; (ii) American operates different aircraft-type with different systems; (iii) American operates into different airports than PSA across the NAS; and (iv) the burden for American in collecting 10 years of information, to the extent such collection is even possible, is disproportional to any need of Plaintiff in having this information for a 10-year period.

Subject to and without waiver of these objections, American will produce those flight operations documents unique to DCA that were provided to its pilots as of the date of the Subject Crash.

**16. Any agreement and/or other document setting forth operational and/or safety requirements that PSA must meet when operating flights under the American Airlines and/or American Eagle brand name.**

**Response**: As American has explained numerous times, including during meet and confers of the JDC and separate meet and confers with the PSC, American and PSA are wholly separate airlines, and American's only role with respect to Flight 5342 was to schedule the flight and as a ticketing carrier. American had no role in the operations of Flight 5342 including but not limited to setting any operational or safety requirements that PSA must meet when operating flights under the American Airlines and/or American Eagle brand name. American refers Plaintiffs to the agreements between PSA and AA setting forth the terms of their relationship; no other responsive documents exist.

**17. Documents concerning reports created, submitted and/or received by American personnel relating to Near Misses between aircraft, including helicopters and commercial aircraft, within the FRZ for the ten years preceding the Subject Crash, including, but not limited to, reports created, submitted and/or received by, or otherwise associated with ASAP, and any corporate voluntary disclosure and reporting program ("VDRP").**

**Response**: American objects to Request No. 17 on the grounds that it seeks documents not relevant to the claims and defenses in this action. As American has explained numerous times, including during meet and confers of the JDC and separate meet and confers with the PSC, American and PSA are wholly separate airlines, and American's only role with respect to Flight 5342 was to schedule the flight and as the ticketing carrier. American had no role in the operations of Flight 5342 including but not limited to providing any information to the PSA pilots operating Flight 5342. American's operations, therefore, are not relevant to the claims and defenses in this action, as PSA was the operating carrier of Flight 5342.

American also objects to Request No. 17 on the grounds that "Near Miss" is overly broad, as explained further in American's objection to that defined term. American's response to Request No. 17 incorporates Near Mid-Air Collision as that term is defined in the FAA's AIM Section 7-7-3(b).