**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| IN RE: MID-AIR COLLISION IN WASHINGTON, D.C., JAN. 29, 2025<br><br>This Filing Relates to:<br><br>*All Cases* | Lead Case No. 1:25-cv-03382-ACR |
| --- | --- |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR THE PRODUCTION OF COCKPIT VOICE RECORDER AUDIO RECORDINGS PURSUANT TO 49 U.S.C. § 1154**

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1
STATEMENT OF FACTS ........................................................................................................ 2
ARGUMENT ........................................................................................................ 3
I. The Court Should Conduct an *in Camera* Review of the CVRs ........................................ 4
II. Production of the CVRs is Necessary to Provide Plaintiffs with Sufficient Information to Receive a Fair Trial ........................................ 5
CONCLUSION ........................................................................................................ 10

# TABLE OF AUTHORITIES

Page(s)

## CASES

**Buschmann v. Little Rock National Airport*,
222 F.R.D. 114 (N.D. Tex. 2004) .......... 4, 5, 8

**In re Air Crash at Lexington, Kentucky, August 27, 2006*,
No. CIV.A.5:06CV316-KSF, 2007 WL 4321865 (E.D. Ky. Dec. 6, 2007) .......... 4, 5, 8, 9

**In re Air Crash Near Clarence Center New York on February 12, 2009*,
No. 09-MD-2085, 2010 WL 4116790 (W.D.N.Y. Oct. 19, 2010) .......... 5, 8, 9

*In re September 11th Litigation*,
No. 02 CIV. 7912 (AKH), 2007 WL 2668608 (S.D.N.Y. Sept. 12, 2007) .......... 4

**McCoy v. Southwest Airlines Co.*,
208 F.R.D. 617 (C.D. Cal. 2002) .......... 4, 5, 6, 9

## STATUTES

Title 49 U.S.C.
§ 1154 .......... *passim*

## REGULATIONS

Title 14 C.F.R.
§ 121.356 .......... 8

## OTHER AUTHORITIES

Advisory Circular (AC) 90-120 .......... 8

## INTRODUCTION

Plaintiffs seek production of the actual audio recordings from the Cockpit Voice Recorders ("CVRs") of the aircraft involved in the mid-air collision of American Eagle Flight 5342 (hereinafter "AE5342") and a U.S. Army Black Hawk helicopter (call sign "PAT25") that occurred on January 29, 2025. Each aircraft was equipped with a CVR that recorded all sounds within the cockpit, as well as radio transmissions to and from the aircraft. The National Transportation Safety Board ("NTSB") recovered both CVRs, downloaded their contents, listened to the audio, and produced publicly available transcripts. The audio from each CVR, however, has not been publicly disclosed and cannot be obtained through typical discovery procedures. Production of CVR audio recordings is dictated by 49 U.S.C. § 1154, which sets out the specific procedure for their production in this litigation.

Section 1154 mandates that Plaintiffs file this motion to obtain copies of the unedited audio recordings of the two CVRs, and this motion is Plaintiffs' only opportunity to obtain those audio recordings that were downloaded by and are in the possession of the NTSB. Production of the CVRs under 49 U.S.C. §1154 is necessary because the published transcripts do not provide the Parties with sufficient information to receive a fair trial. What the pilots said and did in both aircraft must be fully understood to create an accurate reconstruction of what happened, which is critical to Parties and the factfinder. While the bare transcripts of the CVR recordings can tell part of that story, they lack the full context provided by audio evidence, which reveals sounds made by aircraft systems, tone of voice, inflection, volume and other factors that impact an assessment of liability. Discovery of the audio is critical and essential to ensure a fair trial.

Pursuant to LCvR 7(m) and paragraph 7.h. of the Court's Standing Order (ECF Doc. 8), moving counsel for the Plaintiffs have personally conferred via Zoom on two occasions with

counsel for Defendants concerning this non-dispositive motion and were unable to fully resolve their disagreements. Defendant United States of America does not oppose the release of the CVR audio from PAT25 and joins in Plaintiffs' request for the CVR audio from AE5342. Defendants American Airlines, Inc., and PSA Airlines, Inc., however, oppose the release of the CVR audio recording from AE5342, even though they do not oppose the release of the CVR audio from PAT25.

Additionally, Plaintiffs have been in contact with the Office of General Counsel for the NTSB with respect to the CVR recordings and the filing of this motion. The NTSB has advised that it stands ready to produce both CVR recordings to the Court for an *in camera* inspection following the issuance of an Order from this Court pursuant to 49 U.S.C. §1154.

## STATEMENT OF FACTS

The CVR is the device used to record radio transmissions and all other sounds in the cockpit, such as pilot communication, engine noises, automated weather briefings, sounds created by the movement of flight controls and other noises in the cockpit. Both AE 5342 and PAT 25 were equipped with a CVR.

After recovery of the CVRs from each aircraft, the NTSB convened two working groups (the "CVR Airplane Group" and the "CVR Helicopter Group") to listen to the audio recordings from inside each aircraft and create the written transcripts ultimately released by the NTSB as part of its Public Docket. Each CVR working group contained employees of certain defendants in this litigation. The CVR Airplane Group included individuals from the NTSB, FAA, the Airline Pilots Association (the union representing PSA pilots) and the Director of Safety from defendant PSA Airlines. The CVR Helicopter Group included individuals from the NTSB, FAA and the US

Army. A copy of the CVR Airplane Group's Factual Report including the CVR transcript is attached as Exhibit "A", and a copy of the CVR Helicopter Group's Factual Report including the CVR transcript is attached as Exhibit "B".

It is important to note that the CVR transcripts were created by the NTSB for the purpose of improving transportation safety by investigating accidents and incidents and issuing safety recommendations, not for assigning fault and determining legal liability. Accordingly, while the transcripts produced by the NTSB may be adequate for improving air safety and making forward looking recommendations to further aviation safety, they are not adequate for retrospective examination of the facts to assign fault and legal liability.

Although the NTSB has not yet issued its full Probable Cause Report, it conducted its final hearing of the Board on January 27, 2026, where the NTSB issued its findings with respect to the probable cause of the accident and contributory factors, which signified the conclusion of the NTSB's investigation.

## ARGUMENT

Section 1154(a)(3) of Title 49 provides:

> (3) . . . [A] court may allow discovery by a party of a cockpit or surface vehicle recorder recording, . . . , if, after an in camera review of the recording, the court decides that—
>
> (A)the parts of the transcript made available to the public under section 1114(c) or 1114(d) of this title and to the party through discovery under paragraph (2) of this subsection do not provide the party with sufficient information for the party to receive a fair trial; and
>
> (B)discovery of the cockpit . . . recorder recording, . . . , is necessary to provide the party with sufficient information for the party to receive a fair trial.

The statute requires a two-step process. First, the Court must order the NTSB to produce an

unedited copy of the CVR audio recording and conduct an *in camera* review. Second, if the Court determines that production of the unedited copy of the CVR recording is necessary to provide the movant (here the Plaintiffs) with sufficient information to receive a fair trial, the CVR recording should be produced.

For the reasons set forth below, the Plaintiffs respectfully request that this Court enter an Order requiring that the unedited downloaded file(s) for each CVR be provided to the Court to conduct an *in camera* review immediately during pendency of this motion. Plaintiffs also respectfully request that after such review, the Court rule that the complete and unedited audio file(s) of the cockpit voice recorders be produced to the Plaintiffs to ensure that the victims of this tragedy receive a fair trial.

## I. The Court Should Conduct an *in Camera* Review of the CVRs

The CVR recordings are discoverable under 49 U.S.C. §1154(a)(3), provided certain conditions are met to ensure it will not be publicly disseminated in an inappropriate manner. *In re Air Crash at Lexington, Kentucky, August 27, 2006*, No. CIV.A.5:06CV316-KSF, 2007 WL 4321865, at *2-3 (E.D. Ky. Dec. 6, 2007); *Buschmann v. Little Rock National Airport*, 222 F.R.D. 114, 116 (N.D. Tex. 2004); *McCoy v. Southwest Airlines Co.*, 208 F.R.D. 617, 619 (C.D. Cal. 2002); *In re September 11th Litigation*, No. 02 CIV. 7912 (AKH), 2007 WL 2668608, at *2 (S.D.N.Y. Sept. 12, 2007). Because 49 U.S.C. §1154(a)(3) does not allow production of the CVR recording until after the Court conducts an *in camera* review, Plaintiffs respectfully request that the Court immediately direct the NTSB to provide to it a copy of the unedited recording(s) from each CVR so that this Court can conduct the required review of the recording(s).[2]

[2] Plaintiffs respectfully submit that the most efficient way to proceed is to Order the NTSB to

There will be no harm to the NTSB investigation should the Court conduct the *in camera* review and direct production of the recordings from each CVR. One of the main purposes behind the enactment of Section 1154 was to safeguard and protect the NTSB's accident investigation against premature speculation regarding the cause of any aviation crash so that it may "conduct a full and fair investigation" in support of making safety recommendations. *McCoy*, 208 F.R.D. at 619 (quoting Senate Report No. 101-450, 1990 U.S.C.C.A.N. 6376, 6381). Because the NTSB has concluded its investigation and already conducted its final hearing, this purpose will not be undermined by the granting of this motion. *See also, Buschmann*, 222 F.R.D. at 117; *McCoy*, 208 F.R.D. at 619; *In re Air Crash at Lexington, Kentucky*, 2007 WL 4321865 at *2 (primary motivation behind Section 1154 is to prevent litigants from interfering with an ongoing NTSB investigation); *In re Air Crash Near Clarence Center New York on February 12, 2009,* No. 09-MD-2085, 2010 WL 4116790, at *3 (W.D.N.Y. Oct. 19, 2010) (safeguarding the integrity of the NTSB accident investigation is no longer a concern once the investigation is concluded). Indeed, Plaintiffs' counsel have been in contact with the NTSB who stand ready to provide a copy of audio recordings of the CVRs to the Court upon request.

## II. Production of the CVRs is Necessary to Provide Plaintiffs with Sufficient Information to Receive a Fair Trial

Section 1154(a)(3) grants this Court the discretion to order the production of the CVR

---

produce the unedited CVR audio downloads to the Court right away for *in camera* review while this motion is still pending, rather than waiting for this motion to be fully briefed. The Court can then consider any response and/or opposition to this motion filed by Defendants American Airlines, Inc., and PSA Airlines, Inc., any reply from Plaintiffs, and conduct its *in camera* review simultaneously. Not only will this approach allow the Court to assess the recordings themselves in deciding this motion, but it allows the Court to proceed most efficiently and ultimately decide whether to Order production of the CVR audio at the same time it decides this motion.

recording if, after an *in camera* review, it finds that: (1) the written transcript of the CVR "do[es] not provide the party with sufficient information for the party to receive a fair trial"; and (2) discovery of the CVR recording "is necessary to provide the party with sufficient information for the party to receive a fair trial." 49 U.S.C. §1154(a)(3)(A) & (B). Here, the CVR transcripts produced by the NTSB are incomplete as a substitute for the actual CVR audio because they fail to portray fully and adequately what actually happened in each cockpit during the night of the accident. As such, this Court should order production of the audio recordings of both CVRs after it conducts the required *in camera* review.

The creation of the written transcript of a CVR is not an objective task, but involves many subjective decisions of how to interpret the sounds that were recorded. The final written transcript is the product of consensus of the working group that created it. Plaintiffs, however, were not parties to the NTSB's investigation, they were not represented in either working group, and their expert reconstructionists have not been given access to the CVR recordings to allow them to make their own interpretations of the words, voices and sounds in each recording.

After all, the consensus reached by each of the CVR Groups might not be accurate. *See McCoy*, 208 F.R.D. at 620. For example, the NTSB CVR transcripts in this case include multiple instances where a word or sound was deemed "unintelligible" represented by an asterisk in the transcripts produced by the NTSB ("*"), *see, e.g.*, Ex. A at pp. 51, 20:43:39.7; 56, 20:45:24.1, and where a conversation was determined to be "not pertinent to the operation of the aircraft", *see, e.g.*, *id.* at p. 19, 19:42:10.7. Similarly, the transcript includes interpretation of sounds heard on the audio recording. Some sounds are referred to generally, *id.* at p. 61, 20:47:58.1 ("[sound of click]" heard immediately before the crash as the flight crew realizes a collision is imminent),

while others include descriptions based on a conclusion of the CVR working group. *Id.* at pp. 57, 20:46:01.7 ("[sound of tone consistent with altitude alert]"); 61, 20:47:59.5 ("[sounds consistent with impact]"). Plaintiffs' experts or the finder of fact may determine that they understand a word deemed unintelligible by the working groups, that a word on the recording is different than the word agreed upon by the respective working group in the written transcript, that a sound interpreted by the working group as one thing is actually something else, or that a sound described only generally represents something specific occurring in the cockpit. Without access to the audio recordings, it is impossible for them to make these determinations.

Even if Plaintiffs' experts and/or the finder of fact agree with every subjective judgment made by the NTSB's CVR working groups, there is still a great deal of information in the audio recordings that cannot be gleaned from the bare transcript. The transcript will never provide the tone of voice, volume, pitch and inflection of the statements made by the flight crews during the time leading up to and including the accident sequence. Here, the actual audio is critical to Plaintiffs' claims. As an example, the transcript suggests that the flight crew of AE 5342 expressed some hesitation about accepting a circling visual approach to runway 33 at DCA, but accepted it anyway, and the tone of voice and inflection can be critical to understanding the decision. *See, e.g.*, Ex. A, at p. 51, 20:43:24.6 ("I really don't want to but I guess uhhh tell 'em—").

The transcript also replaces expletives with a hash symbol ("#"), including at key moments of the flight. *See, e.g.*, *id.* at pp. 31, 20:10:17.1 (referencing not wanting to fly the circling approach they were later asked by ATC to accept: "Mount Vernon backed up by the uh I-L-S I'm not making the left # turn,"), 61, 20:47:58.1 (the exclamation right before the impact: "oh #"). There are multiple expletives that the hash symbols used in the transcript could represent, each having

different meanings and connotations under the circumstances.

Just as critical are the cockpit noises, chimes, alarms, clicks, etc., that were captured by the CVRs. It is critical for Plaintiffs' experts, and ultimately the trier of fact, to hear the prominence, urgency and volume of the automated alerts the pilots received. Most critically, Plaintiffs' experts and the finder of fact must be able to analyze the "Traffic Traffic" alert that a mandatory traffic-avoidance systems gave to the PSA flight crew approximately twenty (20) seconds before the impact, *see* Ex. A, p. 60, 20:47:40.3.[3] This evidence will show how that TCAS alert stands out from other noises and communications during the approach, and the timing of responsive actions by the PSA flight crew, if any were taken after hearing the alert.

Simply put, the flight crews' situational awareness during the accident sequence is critical to the claims in this litigation, and the transcript alone "cannot reflect the true situational environment in the cockpit." *Buschmann v. Little Rock Nat'l Airport*, 222 F.R.D. 114, 117 (N.D. Tex. 2004) ("The tone of voice, pitch and inflection of statements made by crew members, all of which may be relevant to their state of mind, emotional condition, and situational awareness, are completely absent on the printed page."); *In re Air Crash Near Clarence Center New York on February 12, 2009,* 2010 WL 4116790, at *3 (production of CVR tape is necessary because the printed transcript does not and cannot reflect the tone and manner in which words were said and conversations took place); and *In re Air Crash at Lexington Kentucky*, 2007 WL 4321865, at *2-3 (granting production of the CVR because the audio reflects "changes in voice tone, tempo,

[3] The "Traffic, Traffic" alert issued from the Traffic Collision Avoidance System (TCAS), which PSA's aircraft was required to utilize pursuant to 14 C.F.R. § 121.356. *See also* Advisory Circular (AC) 90-120 ("TA Response. Respond to TAs by attempting to establish visual contact with the intruder aircraft and other aircraft that may be in the vicinity. . . . Coordinate to the degree possible with other crewmembers to assist in searching for traffic.").

volume and inflection, all of which are important" and not included in the written transcript).

This is especially true here as it is critical to determine whether both flight crews took all steps necessary to fulfill their duty to "see and avoid" one another, including when PAT 25 and AE5342 first became aware of one another and what each flight crew was doing before the collision. For the Plaintiffs to have a fair trial, their experts must have full access to the CVR audio for the purpose of reconstructing the accident sequence and the fact finder must hear all of the evidence, which cannot be obtained anywhere other than the CVR audio recordings. *McCoy*, 208 F.R.D. at 620; *In re Air Crash at Lexington, Kentucky*, 2007 WL 4321865, at *2 ("Complete disclosure of the recording to the litigants is vital to a fair trial."); *In re Air Crash Near Clarence Center New York on February 12, 2009,* 2010 WL 4116790, at *3 (the unedited CVR is perhaps the only piece of neutral evidence in an air crash case and is clearly relevant to the parties' claims and defenses).

Pursuant to 49 U.S.C. §1154(a)(4)(A)(i) & (ii), when a court allows production of a CVR recording, a Protective Order limiting the use of the recording to the judicial proceeding and prohibiting dissemination of that recording to any person that does not need access to it shall be issued. The Plaintiffs agree to treat the CVR Recording as "Confidential Material" as contemplated by the Court's October 27, 2025, Protective Order which, among other things, prohibits the dissemination of that information and provides that the Confidential Material shall only be used for the purposes of this litigation.[4]

---

[4] To the extent that the NTSB requires a separate protective order to produce the audio recordings, Plaintiffs are prepared to provide such a proposed order upon request.

## CONCLUSION

For the reasons set forth above, the Plaintiffs respectfully request that this Court enter an order requiring the NTSB to produce unedited copies of the audio recordings from the CVRs for AE5342 and PAT 25 to the Court for an *in camera* review as soon as possible while this motion is pending. After the Court's *in camera* review and consideration of any response or opposition to this motion submitted by Defendants American Airlines, Inc., and PSA Airlines, Inc., and any reply from Plaintiffs, the Plaintiffs respectfully request that this Court direct that the CVR recordings be produced to the movants herein subject to the terms of the existing Protective Order which limits the use of the CVR recording to this judicial proceeding and prohibits dissemination of the recording to any person who does not need access to it, as required under 49 U.S.C. § 1154(a)(4)(A)(i) and (ii).

Dated this 6th day of February 2026.

**KREINDLER & KREINDLER LLP**

By: */s/ Brian J. Alexander*
Brian J. Alexander (Bar ID: NY0679)
Justin T. Green (Bar ID: NY0692)
Anthony Tarricone (Bar ID: 492480)
Daniel O. Rose (Applicant *pro hac vice*)
Vincent C. Lesch (Bar ID: NY0675)
Evan Katin-Borland (Bar ID: NY0674)
Erin R. Applebaum (*pro hac vice*)
Jason Vincent (Applicant for admission)
485 Lexington Avenue, 28th Floor
New York, New York 10017
(212) 687-8181
balexander@kreindler.com
jgreen@kreindler.com
atarricone@kreindler.com
drose@kreindler.com

**CLIFFORD LAW OFFICES, P.C.**

By: */s/ Robert A. Clifford*
Robert A. Clifford (Bar ID: IL0135)
Kevin P. Durkin (Bar ID: IL0136)
Tracy Brammeier (Bar ID: IL0137)
John V. Kalantzis (Applicant *pro hac vice*)
120 N. LaSalle Street Suite 3600
Chicago, Illinois 60602
(312) 899-9090
rac@cliffordlaw.com
kpd@cliffordlaw.com
tab@cliffordlaw.com
jvk@cliffordlaw.com

vlesch@kreindler.com
ekatinborland@kreindler.com
eapplebaum@kreindler.com
jvincent@kreindler.com

**SPEISER KRAUSE, P.C.**

By: *___/s/ Douglas A. Latto___*
Douglas A. Latto (Bar ID: NY0672)
Kenneth P. Nolan (Applicant *pro hac vice*)
Jeanne M. O'Grady (Bar ID: NY0673)
Frank H. Granito, III (Applicant *pro hac vice*)
800 Westchester Avenue, Suite S-608
Rye Brook, New York 10573
(914) 220-5333
dal@speiserkrause.com
f3g@speiserkrause.com
jog@speiserkrause.com
kpn@speiserkrause.com

***Plaintiffs Steering Committee***

**CERTIFICATE OF SERVICE**

I hereby certify that on this 6th day of February 2026, the foregoing document was served by electronic filing on all counsel of record through the Court's ECF system.

I hereby further certify that on this 6th day of February 2026, a copy of the foregoing document was served via email upon:

General Counsel
National Transportation Safety Board
c/o Daniel N. Baronofsky, Attorney
490 L'Enfant Plaza East, S.W.
Washington, DC 20594
(202) 314-6321 (phone)
(202) 314-6090 (fax)
daniel.baronofsky@ntsb.gov

/s/ *Vincent C. Lesch*
Vincent C. Lesch